THE CITY OF HANNIBAL vs. DRAPER.

1. Glasscock filed in the office of the recorder of Marion county, a duly acknowledged plat of the town of Hannibal.   Amongst other memoranda on the map was the following : "lots  numbered 2, 3, 4 in block 26 is  intended for church grounds," and across the lots

were written the words "church ground." Held sufficient, under the act concerning plats of towns and villages, to vest the fee in the county for public use.

2. When the proprietors of town property, lay it out into lots, with streets and avenues running through it, and sell their lots with reference to such plats, such conduct, on their part, will be a dedication of the streets and alleys to the public, and they cannot afterwards resume their control over them.

## RICHMOND & LAMB, for appellant, contend :

That the plat, when filed by Glasscock, operated as a dedication of the lots in question, to the county sf Marion, for "public uses," according to the provisions of the act of the legislature, entitled, "an act concerning towns and villages," approved February 20th, 1835: See Rev. Stat. 1835, page 599, the law governing the case.

By the first section of this act, it is, in effect, enacted that the proprietor of the town or village shall, in the plats which he files, particularly set forth and designate :

First, all the parcels of ground within such town, reserved for public purposes by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons or other public uses.

Second, all lots intended for sale by numbers, and their precise length and width. By the act, all the grounds "laid out" by or on the plat, are comprised in these two divisions. Now, upon the plat filed by Glasscock, and in evidence here, he plainly shows what lots are, and those which are not "intended for sale." Those "intended for sale" are designated by their numbers, and their precise length and width, and by no other designation. Those lots, not intended for sale, but reserved for "public purposes," have other and distinct designations which cannot be mistaken. It strikes the mind as palpably, on looking at the plat, that Glasscock did not intend the lots, marked "church ground," for sale, as that he did not intend the ground marked "public square" for sale. On the margin of this plat, and among other dedications to public uses, even in the same sentence which sets apart the public square, are found these words: "Lots 2, 3 and 4 in block 26, are intended for church ground." These lots are then crossed with red lines, and made conspicuous on the plat in the same manner as the public square. "Church ground" is written in plain words across these lots, and the street passing by them named "Church street." It is not more plain from the plat, that "Church street" or "Bird street" was intended not to be private property, than it is that the lots in question were not intended for private property, or to be sold and used as such. If not liable to sale, they are public property, and the intention of the proprietor to set them apart for public religious purposes and uses, at the time of filing the plat, is shown beyond controversy. Persons buying property and settling in the town, after said plat was filed, bought with the understanding that the lots in question were for public, and not for individual use. Those grounds designated on the plat as not for sale, but for "public use," are by the filing of the plat, vested, in fee-simple, in the county within which the town is situated: See 4 sec. of the act above quoted, Rev. Stat. 1834.

But do the words church ground sufficiently specify the manner in which the public can use the property so as to make the dedication effective? We contend, that the description is sufficiently specific, and that the ground dedicated may be used by the public practically and within the true intent and meaning of the grantor, as shown by his map and the writing thereon. "Church ground" evidently means, as used here, ground appropriated for the purpose of religious worship or pious use. A grave yard is called a "church yard" whether it be near or distant from a church building. Glasscock, himself, on the plat calls a burial ground a church yard, though no church is near it. A grave yard is not private property, but belongs to the great "Republic" of the dead. Such property for public uses is essential to a city, and a grave yard is "church ground." Upon these three lots, each 65¼ by 142 feet

The City of Hannibal vs. Draper.

several large churches might be built for the purpose of public worship, by the various christian sects, with proper regulations as to the time of using them, made by the city authorities. This is not only practicable, but a thing to be desired. A church, for the use of the poor would be a public benefaction, and these lots, or some part of them, could be well used therefore, with no violence to the dedication. A Sabbath school, the erection of a "Republican Meeting House," on the appropriation of the ground by the public, in any way, for religious worship, would be within the meaning of the grant. It were a shame to say that a city in Missouri could not appropriate, properly, a lot of ground devoted to the public for religious purposes.

The non-user by the public or the city, for some fifteen years, cannot revest the title in Glasscock, more particularly under the circumstances. The evidence shows, that Hannibal has been since, 1836, till lately, a very small city; that she is now increasing and may hereafter contain a large population. She has wisely waited, in appropriating this ground, till her population and means will enable her to use it with effect for the public good. Surely nothing less than a non-user for 20 years could avail Glasscock or his vendee. The failure to list this property for taxation, by Glasscock or any other person, and that it has not been taxed at all, shows that it was considered and held as public property and therefore not taxable.

It is contended that Marion county, and not the city of Hannibal should have been the plaintiff. By the 10th section of the 8th article of the act incorporating the city of Hannibal (see private and local laws of 1845, page 126,) it is enacted that all property privileges and rights real and personal theretofore belonging to and vested in the town of Hannibal or county of Marion for the use of the inhabitants of said town, should be vested in the corporation of said city of Hannibal. It was certainly not intended by the 4th section of the act concerning town plats, that any beneficial, exclusive interest should vest in the whole county, from the town plats filed, unless so specified in the plat, or that the county should control the public grounds designated. It could not have intended that the county or county court should always control the public landing, streets and public square, in Hannibal, for county purposes—Hannibal has never been the county seat.

The public uses, contemplated by the statute, were for the immediate benefit of the citizens of the town, and indirectly for the public generally, including the traveling and commercial community, from all quarters. But if the county still has an interest nominally as trustee the court below should have allowed the city of Hannibal as plaintiff, to make the county court a party to this suit, in order that all difficulty, as to the title, might be settled. The citizens of Hannibal, being the principal beneficiaries, might sue: See 3d article of the act "to reform the pleadings and practice in courts of justice in Missouri," particularly the 1st and 10th sections of said 3d article.

Be this as it may, if the decision of the court below, upon the main points involved, should be reversed, proper parties may easily be made.

## REDD & LAKENAN, for respondent, maintain :

That the plaintiff's title is defective in the following particulars, and that no title possess under the 1st, 2nd, 3rd and 4th sections of the Rev. Code 1835, page 599.

I. That act requires, that parcels of ground, reserved for public uses should be described in a plat by boundaries, courses, and extent: section 1. And lots designated for sale, by number, length and width. These acts are required by the statute, on the part of the proprietor, as the evidence of his intent to divest himself of the title for the use and benefit of the public.

The ground in this case, was not described, either by boundaries, courses or extent—the evidences of his intention, required by the act, does not exist in this case. But the evidence the act requires him to exhibit on the map of his design to sell, does exist—description by number, length and width.

The act requires that the ground should have been intended for public uses. Lots intended for church ground, cannot, from their nature, be for public uses.

What is a church? An organization of private individuals for devotional and religious purposes. Each separate organization is a separate and distinct church, as the Papal, Episcopalian, Methodist, Baptist, Presbyterian, Lutherian, &c. If this be a valid conveyance, in which of these antagonistic churches does the use vest? Which of them can claim to be the public, to the exclusion of the rest?

The proprietor in this case, evidently intended that this ground, at some future period, should be the site of a building to be used by some one of the many churches or religious organizations that exist in the community, which of them, he intended should have the use, he has not informed us.

His words and acts amount to nothing more than the expression of an intention on his part, at some future period, either to donate or sell this ground to some church, as a site for a house of worship; and the presumption is, that he designed to sell rather than donate, from the fact, that he laid off and numbered these lots in the manner he was required to describe lots intended for sale.

The use in this case, were it public in its nature, must of necessity be confined to a private association, and is not a public use in the sense contemplated by the statute. The uses contemplated, are pointed out—streets, alleys, &c., and of a nature wholly different from the use contended for by the plaintiff.

SCOTT, J., delivered the opinion of the court.

This was an action in the nature of an ejectment, instituted by the appellant against the appellee, for the recovery of the possession of lots three and four, in block twenty-six, on the plat of the town of Hannibal. In consequence of adverse instructions, the plaintiff submitted to a non suit, and afterwards brought the cause to this court.

It appears that in the year 1836, Stephen Glascock filed in the office of the Recorder of Marion county, a duly acknowledged plat of the town of Hannibal. The town is laid off fronting the Mississippi river, and its locality can be identified by Bear Creek, which runs through a part of the town, and mouths in the Mississippi river, very near its southern boundary. The plat is divided into blocks, streets and alleys, and the blocks, thirty-two in number, are subdivided into lots. The blocks are numbered, and so also are the lots of each block. On the margin of the plat, the length of the front and the depth of each lot are stated, and also the width of the alleys. The width of the streets, respectively, is marked on each street. Amongst other memoranda on the map, is the following: "lots numbered 2, 3, 4 in block 26, is intended for church grounds." The reservation of the public square and landing, is made by the declaration in writing, that particular lots are intended for that purpose. The lots intended for church grounds, and the public square, were crossed entirely with red lines very near each other. Across the public square, the words "public square" are writ-

41

ten, and across the church grounds are written the words "church ground." Since the year 1840, the lots in controversy have not been assessed to Glascock. The town did not improve very rapidly at first, but since 1840 it has increased considerably in population. No use, as yet, has been made of the lots by the inhabitants of the city. Glascock, by a quit claim deed, aliened the lots in dispute to the defendant, who had previously inclosed them. The act for the incorporation of the city of Hannibal prescribes, that all the real property heretofore vested in the county of Marion, for the use of the inhabitants of said town, shall be vested in the corporation hereby created: Private Acts, 1845, p. 126. The answer to the petition denies that the plat conveyed to the county of Marion the lots in controversy, and also denies that the act of incorporation of 1845, transferred the title to the lots from Marion county to Hannibal city. It is not easy to determine the precise points on which the cause turned below, as, although many instructions were refused, none were given indicative of the views of the court. As, however, the parties went to trial on the answer, we will assume that it embodied the matters relied on as a defence.

The act of 1835, concerning plats of towns and villages, provides, sec. 1, that the proprietors of every town shall make an accurate map thereof particularly setting forth and describing all the parcels of ground reserved for public purposes, by their boundaries, course and extent; whether they be intended for avenues, streets, alleys or other public uses, and all lots intended for sale, by numbers, and their precise length and width. The 4th section enacts, that such plats shall be a sufficient conveyance to vest the fee of such parcels of land, as are therein expressed, named or intended for public uses within the county in which the town is situated, for the use of the inhabitants thereof. The 5th section of the act imposes on any proprietor who shall cause to be deposited with the Recorder, any map or plat which does not set forth and describe all parcels of ground which have been or shall be promised or set apart for public uses, a penalty double the value of the ground promised, or pretended to have been set apart for public uses, and not set forth on the map or plat.

Verily we live in a brazen age. Draper claims the lots in controversy, under a quit claim deed. He of course is affected with notice, as he bought only such title as Glascock pretended to have. If he succeed, he will gain property by aiding in a violation of law committed by Glascock, which subjected him to a penalty equal to double its worth. It will not be contended, but that the map is evidence of some pretence to set apart these lots for church purposes, and if it fails to

accomplish that end, then Glascock has been guilty of a violation of law, and out of that violation grows the right which Draper holds.— And thus a law which was intended to secure reservations for public purposes, made in laying off towns, and to prevent litigation respecting them, is made an engine for wresting them from those for whose benefit they were designed; and that, too, through the instrumentality of him, whose purpose can only be accomplished by declaring that he has trampled the law under his feet.

But, in charity to Glascock, we will not impute to him a violation of the law. We are of opinion, that the plat, whatever may be thought of it by the defendant, is strictly within the act, and, that it conveys to Marion county the lots, for the use of the inhabitants of the town of Hannibal. ' It is obvious, from an inspection of the plat, that the boundaries, course and extent of the lots intended for church purposes, are described. When any lot of the town is located, others may be. *Id certum est, quod certum reddi potest.* The length and width of all the lots of the town are written on the margin of the map. Their boundaries and course can be identified by the boundary and course of others. The most usual mode of identifying any vacant lot in a town, is a reference to lots whose location is known. The lots reserved are of the same size as of all others. In addition to this, the lots reserved are cancelled with red lines, and have written across them, the words "church purposes." As to the words of reservation, it will be observed that the proprietor employs one of the words, which the act contemplates as sufficient. The 4th sec. of the act shows, that the reservation may be made by the word "intended." On the margin of the map is stated that the lots in controversy are intended for church purposes. The same word is employed by the proprietor, in making the reservations of the public square and landing.

It is presumed that in the nineteenth century, in a christian land, no argument is necessary to show that church purposes are public purposes, and that the inhabitants of a town have an interest in ground reserved for such a use. We all know what is meant by the phrase, nor will we indulge the thought, that the trust will not be carried out in the spirit in which it was originally created. To deny that church purposes are public purposes, is to argue that the maintenance, support and propagation of the christian religion is not a matter of public concern. Our laws, although they recognize no particular religious establishment, are not insensible to the advantages of christianity, and extend their protection to all in that faith and mode of worship, they may choose to adopt.

The act for the incorporation of the city of Hannibal, passed February 21st, 1845, sec. 10, vested in that city all the title to the lots in controversy, which was transferred by the act of reservation to Marion county, for the use of the inhabitants of the town of Hannibal.

If the statute concerning the plats of towns, were out of the way, and this question arose upon the fact of dedication alone, it is not perceived how the defendant could maintain his defence to this action. It seems now to be settled that when the proprietors of town property lay it out into lots, with streets and avenues running through it, and sell their lots with reference to such plat, such conduct on their part, will be a dedication of the streets and alleys to the public, and they cannot afterwards resume their control over them. And this principle is equally applicable to the case of a similar dedication of ground, to be used as an open square or public walk, or a landing or commons: Trustees of Watertown vs. Cowen, 4 p. 513; City of Cincinnati vs. White, 6 Pet. 431; City of New Orleans vs. United States, 10 Pet. 662; 3 Kent 432, 51. The case in 6 Pet. shows, that the deed of the proprietor of a town, after making a dedication of a lot of ground to the public, would be inoperative to pass a title by which the inhabitants of the town could be disturbed in the enjoyment of the right conferred by the act of dedication.

The other Judges concurring, the judgment will be reversed and the cause remanded.