THE VILLAGE OF WEEPING WATER, PLAINTIFF IN
ERROR, v. EUGENE .L. REED AND THE WEEPING
WATER ACADEMY, DEFENDANTS IN ERROR.

1. **Notary Public:** SEAL. The seal of a notary public which
contains the words "Notarial Seal," the name of the county for
which he was appointed, and the word "Nebraska," is sufficient
for the authentication of his official acts. Section 5 of chapter
sixty-one of the Compiled Statutes does not require the name
or initial of the notary to be engraved in the seal. The provis-
ion of the section concerning the name or initials of the name of
the notary is permissive only.

2. **Town Sites:** EXECUTION AND ACKNOWLEDGMENT OF PLAT.
In the year 1868 the owners of real estate caused the land upon
which the village of W. now stands to be surveyed as a town
site, and in 1870 the plat thereof to be recorded. All the owners
signed and acknowledged the plat except one, whose name
was signed by another one of the platters as "attorney." The
person whose name was thus signed, but who did not acknowl-
edge the plat, afterwards conveyed to a third party his interest
in the town site, excepting certain lots and blocks, as designa-
ted by the plat. His grantee and all others have at all times
recognized the validity of the plat. *Held,* That under the pro-
visions of section 115 of chapter 14 of the Compiled Statutes,
the execution and recording of the plat sufficiently complied
with the provisions of section 42 of chapter 53 of the revised
statutes of 1866—as amended by the act of February 8, 1869—
and that by the provisions of section 43 of the same chapter,
the recorded plat was equivalent to a deed in fee simple from
the proprietors to the public of all portions of the platted land
dedicated to public use.

3. ———: ———: DEDICATION: EJECTMENT. Where in such
plat a square is marked and designated therein as "College
Square," the lots in adjoining blocks, abutting thereon, being
only one-half the size of other lots in that part of the plat, and
so laid out as to front to the square, and held at a higher valua-
tion by reason thereof in order to secure compensation for the
land included in such square, it was *Held,* That there was a
dedication of College Square to the public, with a right to the
use thereof for the purpose of an institution of learning so long
as the user continued; the title remaining in the public, as

represented by the municipal corporation (after being incorporated) for that use, and ejectment will lie to remove any person unlawfully in possession.

4.   Ejectment: LIMITATION: BURDEN OF PROOF. Where, in an action of ejectment, the defendant in possession of the real estate, the subject of the action, relies upon the statute of limitations as a defence, the burden of proof is on him to show that his possession has been continuous, adverse, hostile and exclu sive during the ten years last preceding the commencement of the action.

ERROR to the district court for Cass county.   Tried below before HAYWARD, J.

*H. D. Travis,* for plaintiff in error.

*J. H. Bellows* and *E. H. Wooley,* for plaintiff in error.

REESE, J.

This was an action in ejectment instituted by the village of Weeping Water for the possession of a parcel of land designated on the village plat as "College Square." The action was instituted for the purpose of ejecting the defendant Reed, but before the cause was tried the Weeping Water Academy appeared and made claim to the property, and asked to be made a defendant, which was done. Each defendant then filed separate answers denying the plaintiff's title or right of possession.   Upon trial judgment was rendered in favor of the defendants, and plaintiff prosecutes error to this court.

From the testimony it appears that on the 19th day of December, 1870, the owners of the land upon which Weeping Water now stands filed in the office of the county clerk the plat and field notes of the town.   The survey had been made in March, 1868, and the acknowledgment taken on the 29th day of June of the same year.   In a part of the plat rather remote from what seems to have been intended as the business portion of the town, a block

was left undivided and designated as "College Square." The lots surrounding this block and fronting towards it were of one-half the size of other lots in that part of the plat as is shown by the following diagram :

For some years after the platting of the ground, there appears to have been no demand for the lots in that part of the town where College Square was located, and a part of the square and a considerable portion of the other blocks, streets, and alleys were enclosed with a fence, and the grounds used for pasturage and other purposes, but as the demand grew up for the property the fence was removed.

On the 20th day of June, 1885, and about ten days before the commencement of this action, the Weeping Water Town Company, by E. L. Reed, president, and F. Bellows, secretary, deeded the property to the defendant academy, and its claim of ownership is based upon this deed.

A great many questions are presented by plaintiff in error, growing out of alleged errors of 'the trial court in its rulings in admitting in evidence deeds and other documents presented by defendant on the trial. As the trial was to the court without a jury we shall disregard these exceptions and take it for granted that the court was as able to pass upon the admissibility of the evidence in considering the whole case as during the trial. We will, however, notice one which seems to require some attention because of its general importance. It appears that one of the deeds introduced and objected to was acknowledged by the grantor before a notary public having a seal, the impression of which appeared on the paper. This impression did not contain the name nor the initials of the name of the notary before whom the acknowledgment was taken. The objection to the introduction of the deed was that the acknowledgment was not authenticated and proved as required by law.

Section 5 of chapter 61 of the Compiled Statutes, Laws 1869, p. 22, sec. 5, provides that "Each notary public, before performing any of the duties of his office, shall provide himself with an official seal, on which shall be engraved the words 'Notarial Seal;' the name of the county for which he was appointed and commissioned, and the word 'Nebraska,' and in addition, at his option, his name, or the initial letters of his name, with which seal, by impression, all his official acts as notary public shall be authenticated."

It is contended that the requirement of this section is, that the seal must contain either the name of the notary

or the initials of his name, as he may prefer, and to this extent he may exercise his choice—his option—but no further. On the part of defendant in error it is insisted that the proper construction of the section is, that the seal must contain the words provided for, and if the notary so desire, he may add his name or the initials thereof; that he may exercise his option as to either, and that the seal is as good without either as with. This, we think, is the correct view. The proper construction of the section, as we think, is, that the seal shall contain the words, " Notarial Seal," the name of the county for which the notary was appointed, and " Nebraska "; and that, if the notary so desire—at his option—he may add his name or the initials thereof. This has been the construction placed upon this section by the bar of the state, and, so far as we know, by the officers of the state and of the counties throughout the state, and it would require a strong case indeed to justify a court at this late day in adopting the construction contended for and thus destroying the evidence of the title to real estate throughout the state upon which reliance has been placed since the date of the enactment of the law. We therefore hold that the court did not err in admitting in evidence the deed referred to.

There are two principal questions involved in this case, which are : Was the filing and recording of the town plat in connection with the conduct and representations of the parties in interest a dedication of College Square to the public? and if such was the effect, can plaintiff maintain ejectment for its possession? These questions arise upon the allegations of the motion for a new trial and the petition in error, that the findings and judgment of the district are not supported by the evidence, and are contrary to law.

First, Was there a dedication of College Square?

The affirmative of this question is insisted upon by plaintiff in error with much earnestness and apparent con-

fidence, while the negative is as strongly contended for by defendant in error. This contention arises out of a defective acknowledgment attached to the town plat. The "explanation" and plat are executed by F. M. Wolcott, Hattie B. Wolcott, E. L. Reed, Annie B. Reed, Garry Treat, Kate Treat, Levina Hunter, and S. Clinton and Mary Clinton, by their attorney, E. L. Reed. The justice before whom the acknowledgment was taken certified therein that all the parties named in the certificate appeared and acknowledged the plat, but no mention is made of the Clintons, and there is no proof of their having signed or acknowledged the plat. Their names appear thereto, but it is signed "by their attorney, E. L. Reed," the defendant, and there is no proof of the existence of any authority on the part of Reed to sign their names. But it appears that the Clintons have never questioned the legality of the platting of the town, and on the 4th day of August, 1875, they executed a deed to L. F. Reed, by which they conveyed to him all their interest in the town site, excepting certain lots and blocks, thereby recognizing the existence and legality of the plat. Again, the defendant, E. L. Reed, did sign and acknowledge the plat, and since Clinton has recognized the validity of the act of Reed for him, we do not see that Reed can at this day very well question the validity of his own act.

The plat was filed for record on the 19th day of December, 1870, and therefore must be governed, so far as the effect of the platting and recording is concerned, by sections 42 et seq. of chapter 53 of the Revised Statutes of 1866, as amended by the act of February 8, 1869. Laws 1869, p. 26. Sections 42 and 43, as amended, are as follows:

"Section 42. The proprietor of any land may lay out a town or addition to any town, and shall cause an accurate map or plat thereof to be made out under the name of ........ (naming it), designating explicitly the land so laid

out, and particularly describing the lots, streets, avenue;
lanes, alleys, or other grounds belonging to such town or
addition; the lots must be designated by their numbers,
and the streets, avenues, lanes, and other grounds by names
or numbers; and such plat shall be acknowledged before
some officer authorized to take the acknowledgment of
deeds or conveyances of real estate, and shall be filed and
recorded in the office of the county clerk of the county;
and in case the land so platted, acknowledged and recorded,
be an addition to any town incorporated under the general
laws of this state, said lands shall be a part of such incor-
porated town for all purposes whatsoever, and the inhabit-
ants thereof shall be entitled to all the rights and privileges
and be subject to all the ordinances, by-laws, rules and
regulations of the town to which such land is an addition.

"Section 43.   Such plat and acknowledgment, being so
recorded, shall be equivalent to a deed in fee simple from
the proprietor, of all streets, alleys, avenues, squares, parks,
and commons, and such portion of the land as is therein
set apart for public, county, village, town, or city use, or
is dedicated to charitable, religious, or educational pur-
poses."

As we have said, Clinton has never questioned the legal-
ity and regularity of the platting of the town, but, upon
the contrary, has expressly ratified it by his deed to L. F.
Reed.   So, also, has E. L. Reed, by his deed to L. F.
Reed, dated June 12th, 1875, ratified it (if, indeed, any
ratification was necessary on his part), and in which he
conveyed his interest in the town site, excepting certain
lots and blocks reserved.   On the 13th day of August,
1875, L. F. Reed and wife conveyed all of the unsold por-
tion of the town site by particular descriptions of lots and
blocks, according to the plat, to the Weeping Water Town
Company.   Under this conveyance defendant academy claims
by deed of June 20, 1885, in which the property is deeded
to it by the Town Company, and designated as "all that

portion of said village of Weeping Water known and platted as College Square, and reference is hereby made to the recorded plat of said town," etc. All parties to this action, therefore, are claiming under the plat referred to, and no one is disputing its validity for the purposes of a town plat. Under these circumstances it seems to us that section 115 of chapter 14 of the Compiled Statutes (enacted in 1879) must be held as curing any defects which may have existed in the acknowledgment of the plat. This section is as follows: "None of the provisions of this chapter shall be construed to require re-platting in any case where plats have been made and recorded in pursuance of any law heretofore in force; and all plats heretofore filed for record, and not subsequently vacated, are hereby declared valid, nothwithstanding irregularities and omissions in manner or form of acknowledgment or certificate; but the provisions of this section shall not affect any action or proceeding now pending."

It is claimed by defendant in error that such a construction of the section above quoted as would hold it to cure the defect in the plat would be a violation of both the constitution of the United States and of this state, because it would have the effect of depriving the owner of his property without due process of law, and of taking private property for public use without compensation. To this we cannot give our assent. It cannot deprive Clinton of his property, for he claims no interest in the land in dispute. Neither can it affect his grantees, for they hold under him with direct reference to a lawful and valid plat. We therefore hold that, at least so far as the present action is concerned, the plat must be treated as having been lawfully made, and that it was equivalent to a deed in fee simple, under the provisions of section 43 above quoted.

It is insisted by defendants in error that even under the construction here given, there is no proof that the plattors intended to dedicate College Square to public use or to the

village of Weeping Water, and that it remained their property. Aside from the plat itself, the testimony upon this point is somewhat meager, yet we think it is sufficient. It will be observed that the lots in the adjacent blocks were laid out with direct reference to the square in question. The lots were only one-half the size of other lots in that part of the plats. The designation "College Square" was evidently intended to mean that it was set apart for a use or purpose not private in its character, and in which the public would have an interest. That its use would make the adjacent property more valuable, and that the square was a donation or dedication. ' Mr. Barnes purchased two of the adjoining lots of Mr. Reed, and in his testimony, referring to the transaction, says : " I asked him the price of them and Mr. Reed spoke of the numbers as being one and two, and it looked like a small piece of ground to contain two lots. I asked him why he called it two lots, and he said the lots opposite College Square were divided into two rods wide instead of four as elsewhere in the town. I asked him why the lots were divided in that way, and he said it was in order to get compensation for College Square." In this transaction Reed was acting for the town company. In the testimony of Mr. Reed, in his cross-examination, the following question was propounded to him : "Will you explain why these lots fronting on College Square were less than the other lots?" His answer was, "The lots fronted on the public square and would be more valuable." It is also admitted of record that this square has not been taxed since 1875. These facts are sufficient to establish a dedication to the uses indicated. *Hannibal v. Draper*, 15 Mo., 634. *Doe v. Attica*, 7 Ind., 641. *Winona v. Huff*, 11 Minn., 75. *Church v. Hoboken*, 33 N. J. L., 13. *Baker v. Johnson*, 21 Mich., 319. *Cincinnati v. White*, 6 Peters, 431. *Trustees v. Havens*, 11 Ill., 554. *Gregory v. Lincoln*, 13 Neb., 353.

The effect of the plat being a deed in fee, and the facts

and circumstances connected with the platting and conduct of the original owners showing a dedication, the question arises as to whom the fee was conveyed and for what purpose. Evidently the fee was conveyed to the public as represented by the citizens and property holders of the town, and, when incorporated, in their corporate capacity for the purpose, only, for which the dedication was made, and no conveyance would be necessary to entitle the proper occupant to the possession. Therefore the village holds the title for that use. Such being the case, ejectment will lie to remove any person from the possession who might be using the square for a purpose not contemplated by the dedication. Dillon on Mun. Corp., sec. 648. *Church v. Scholte*, 2 Iowa, 27. *San Francisco v. Sullivan*, 50 Cal., 603. Sedgwick & Waite on Trial to Title to Land, sec. 267, *et seq.*

It is contended that Reed, by himself and grantors, has held adverse possession of the square in question for more than ten years before the commencement of this suit, and that plaintiff's action is barred by the statute of limitations. The testimony shows that prior to the year 1875 a part of the square, with other blocks, streets, and alleys, was enclosed with a fence and used for pasture, etc., but that about that time a market for the lots arose, and that they might be sold, the fence was removed. No actual possession was afterwards had until in the year 1882, during which time the property was unenclosed and subject to the use of the public. In 1882 it was again fenced for the purpose of a base ball ground and used as such, but upon objection being made by the citizens the fence was removed. Afterwards the ground was again enclosed with a wire fence, and trees were set out on the square and surrounding streets. The enclosure was also used for a pasture lot for cows. At this time there were a number of residences of considerable value as well as other valuable improvements upon the lots fronting the square. It is pretty clear that the possession

has not been such as to protect defendant under the statute. In order to do so it must have been continuous, adverse, hostile, and exclusive during the ten years next preceding the commencement of the suit. Instead of such a possession there was an apparent abandonment of the property for a number of years—1875 to 1882—and at no time since the first named year has defendant caused the property to be taxed or in any way treated by the public as private property. It has sustained none of the burdens of the government, either municipal or otherwise. It is quite clear that the action was not barred.

The possession of Reed being in contravention of the purpose of the grant or dedication, it follows that the judgment of the court should have been in favor of plaintiff instead of defendant, and this without any reference to any title the defendant academy may have. For neither it nor its grantees or tenants have any right to occupy or use the premises in any other manner than in accordance with the dedication.

The answer of the academy is the same as that of Reed. No affirmative defense is presented. No relief, equitable or otherwise, is sought. It bottoms its defense alone on the weakness of plaintiff's case. Therefore the conclusion as to the rights of plaintiff as against Reed virtually disposes of the whole case. But the question might arise as to what rights, if any, has the academy in the square. We answer, as to the deed from the Weeping Water Town Company, of June 20, 1885, it has none. The town company having no title could convey none. But under the dedication, the rights of no educational institution having intervened, it will have all the rights of possession and use so long as it may see proper to occupy it as a site for an institution of learning. It may hold the possession as the beneficiary so long as it holds within the provisions of the dedication. In short it may use it for a "college square," but for no other purpose. So long as its occu-

pancy is in accordance with the grant, so long will its right of possession be unimpaired. But upon its failure to so use the property its rights cease and are terminated. Anything short of this would be to sanction a violation of the contract of dedication and an act of injustice to those of the residents of the village who have bought and improved property on the faith of the dedication and the expected future use of the square.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.