SHERIDAN COUNTY, APPELLEE, V. ALEXANDER MCKINNEY ET AL., APPELLEES; CORNELIUS C. CUYLER ET AL., APPELLANTS.*

FILED MAY 24, 1907. No. 14,833.

Acknowledgment: CERTIFICATE. A certificate of a notary public not authenticated by a statement either engraved upon his seal or written under his official signature of the date of the expiration of his commission or term of office is void.

APPEAL from the district court for Sheridan county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*W. W. Wood* and *Flansburg & Williams,* for appellants.

*C. Patterson, J. E. Gilmore* and *A. G. Fisher,* contra.

AMES, C.

In January, 1900, Sheridan county began an action against Alexander McKinney and Lucilla, his wife, to foreclose tax liens delinquent for a series of years upon a tract of land lying in the county, the title to which was in the former named defendant. Cuyler and Graham, two other defendants, were alleged to be owners by assignment of a mortgage lien upon the land, and they appeared and pleaded their instrument by cross-petition, to which Alexander McKinney answered by a general denial. The action proceeded to trial and a decree adjudging the taxes as first lien, and the alleged mortgage debt as second lien, and directing a sale of the premises, as is usual in such cases. Service was attempted to be made upon Lucilla by publication, on the ground of nonresidence, but she afterward appeared, and upon motion and proof of residence procured the decree to be vacated and the cause to be again set down for trial. She also answered the cross-petition by a general denial, and further answered specifically that the premises were a homestead occupied by her husband and herself

---

* Rehearing allowed. See opinion, p. 223, *post.*

and their minor children as such, and that the alleged mortgage was a cloud upon her title, and praying that it be so adjudged. The suit proceeded to trial and a decree, in which the court found generally against the cross-petitioners and in favor of the defendants McKinney upon the issue as to the alleged mortgage, and dismissed the action with respect thereto. But it was found that the cross-petitioners were the owners by purchase and assignment of the tax liens set forth in the petition of the plaintiff, and decreed a foreclosure of the same. This latter finding and decree is without the support of a pleading or of sufficient competent proof, but it was not assailed by motion in the district court, nor did either the county or the defendants McKinney or either of them appeal, so that the error cannot be availed of here. Cuyler and Graham alone appeal.

We shall not discuss the evidence upon the issue whether the premises were a homestead. Counsel for appellants seem to concede in their brief that it is sufficient to support the finding of the trial court, if the defendants McKinney are credible witnesses and their testimony is worthy of belief. There was no attempt at a direct impeachment of them, and the trial court was more competent to weigh their testimony than we are. We think that an accusation of vagueness on this issue, or of apparent reluctance and perhaps insincerity upon another, is not sufficient to overcome his judgment or to wholly discredit the witnesses. Their testimony with respect to the homestead character of the premises is not in itself incredible, and, if true, is sufficient to establish their contention.

At the second trial the notes and mortgages pleaded in the cross-petition had been lost, and appellants were therefore compelled to rely solely upon the county record, and hence arises the important question in the case. The premises were a homestead. Not only is the existence of a mortgage put in issue by both defendants by general denial, but the wife expressly denies ever having acknowledged any such instrument. On the witness

stand she not only repeats such denial, but also denies any present recollection or knowledge that she signed the alleged instrument in suit. No one testifies to having seen her sign it, or to having seen her purported signature to it, or to any positive knowledge that it is hers, so that the fact must be established, if at all, by the public record, and the verity of the record depends upon the sufficiency of the notary's certificate of acknowledgment there shown. Comp. St. 1905, ch. 73, sec. 14. Section 5, ch. 61, Comp. St. 1905, in so far as it pertains to the present controversy, is as follows: "Each notary public, before performing any duties of his office, shall provide himself with an official seal, on which shall be engraved the words 'Notarial Seal,' the name of the county for which he was appointed and commissioned, and the word 'Nebraska,' and in addition, at his option, his name and the date of expiration of his commission, or the initial letters of his name, with which seal by impression all his official acts as notary public shall be authenticated, and under his official signature on all certificates of authentication made by him, such notary public shall write the date at which his term of office, as such notary public will expire; provided, such date of expiration is not engraved on the seal."

The certificate in question is concededly in due form, except that there is neither engraved upon the notary's seal, nor appended in writing to his signature, a statement of the date of the expiration of his commission or term of office. Is this defect fatal? Under sections 13, 14, ch. 73, Comp. St. 1905, only instruments "duly recorded" can be read in evidence in the absence of the original. Is the mortgage in suit duly recorded? If the statute had peremptorily required the date to be engraved on the seal its omission would without doubt have been fatal. *Oelbermann v. Ide,* 93 Wis. 669; *Welton v. Atkinson,* 55 Neb. 674; *Byrd v. Cochran,* 39 Neb. 109. Such an omission under such a statute would have destroyed the official character of his seal. But section 5 of the statute, *supra,* requires

that all the notary's official acts shall be authenticated, not only by his official seal, but by his official signature, so that his name without the added words "Notary Public" would clearly be insufficient, and so we think that the date engraved upon his seal is required as an addition to, or rather as a part or amplification of, his "official signature." It is not worth while to speculate as to what was the object or purpose of the legislature in making this requirement. It is enough to say that the requirement itself is as peremptory as any other contained in the statute, and, if it may be disobeyed, any or all the rest may be treated in like manner without impairing the authenticity of the instrument or of its record. We think there is not sufficient proof in the record that the wife either signed or acknowledged the mortgage in suit, and that it is void as to her, and that, the premises being a homestead, it is also void as to her husband.

We therefore recommend that the judgment of the district court be affirmed.

JACKSON, C., concurs.

CALKINS, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed February 20, 1908. *Former judgment of affirmance vacated and decree entered:*

1. **Notaries: CERTIFICATE: SEAL.** The seal of a notary which contains the words "Notarial Seal," the name of the county for which the notary was appointed, and the word "Nebraska," is sufficient for the authentication of his official acts; and his failure to write under his official signature the date when his commission will expire does not render his certificate void.

2. **Acknowledgment: IMPEACHMENT.** A certificate of acknowledgment of a deed or mortgage, in proper form, can be impeached only by

clear, convincing, and satisfactory proof that the certificate is false and fraudulent; and whilst the making of a false certificate is a fraud upon the party against whom it is perpetrated, yet the mere evidence of a party purporting to have made the acknowledgment usually cannot overcome the officer's certificate, nor will such evidence, slightly corroborated, overcome it.

BARNES, C. J.

By our former judgment in this case it was held that a certificate of a notary public, not authenticated by a statement either engraved upon his seal, or written under his official signature, of the date of the expiration of his commission or term of office, is void. *Ante*, p. 220. This was so vigorously assailed by the appellants that a rehearing was granted, the case has been reargued to the court, and is again before us for consideration.

The certificate of the notary public attached to the mortgage which the appellants sought to foreclose in this action is in due form. It appears, however, that the date of the expiration of his commission was not engraved upon his seal, or written by him under his official signature, and the effect of such omission is presented for our determination. By section 5, ch. 61, Comp. St. 1891, as it existed prior to the legislative session of 1893, it was provided: "Each notary public, before performing any duties of his office, shall provide himself with an official seal, on which shall be engraved the words 'Notarial Seal,' the name of the county for which he was appointed and commissioned, and the word 'Nebraska'; and in addition at his option, his name or the initial letters of his name, with which seal by impression all his official acts as notary public shall be authenticated." While the foregoing section was in force, the question here presented was before this court in *Weeping Water v. Reed*, 21 Neb. 261, and it was there held that the seal of a notary public, which contains the words "Notarial Seal," the name of the county for which he was appointed, and the word "Nebraska," is sufficient for the authentication of his official acts; and that the provision of the section concerning the name or

initials of the name of the notary is permissive only. It was said in the opinion: "The proper construction of the section, as we think, is that the seal shall contain the words 'Notarial Seal,' the name of the county for which the notary was appointed, and 'Nebraska'; and that, if the notary so desire, at his option, he may add his name or the initials thereof. This has been the construction placed upon this section by the bar of the state, and, so far as we know, by the officers of the state, and of the counties throughout the state, and it would require a strong case indeed to justify a court at this late day in adopting the construction contended for and thus destroying the evidence of the title to real estate throughout the state upon which reliance has been placed since the date of the enactment of the law." It appears, however, that the legislature at its session of 1893 amended the section above quoted by adding the words, "And under his official signature on all certificates of authentication made by him, such notary public shall write the date at which his term of office, as such notary public, will expire; provided such date of expiration is not engraved on the seal." Comp. St. 1893, ch. 61, sec. 5. So, in the case at bar, we are required to determine the effect of the words added to the original statute by the amendment above mentioned.

It is contended by defendant Lucilla McKinney that the failure of the notary public to write under his official signature to his certificate of authentication the date of the expiration of his commission renders the acknowledgment void; and, as the matter of the acknowledgment of the mortgage in question is in issue in this case, neither the mortgage itself nor the record of it is admissible in evidence, and for that reason the judgment of the district court must be affirmed. It appears that the mortgage was delivered to the clerk of the district court after the original decree of foreclosure was rendered, and has been lost or abstracted from the files, and after making due proof of that fact the record of it was offered in evidence and was

18

received by the trial court. We are unable to determine whether the judgment of that court was entered for the defendants McKinney because of the omission above mentioned, or for some other reason, for there was a general finding in favor of the defendant Lucilla McKinney, whose defense to the foreclosure of the mortgage was that she had never acknowledged it, and who produced some evidence tending to establish that defense. Our former decision necessarily affirmed the judgment of the district court. Upon a careful review of the record, and we think the weight of authority, we are convinced that our judgment was wrong.

The certificate of the notary to the acknowledgment of the mortgage in question reads as follows: "The State of Nebraska, Sheridan County, ss.: Be it remembered that on this 8th day of January, A. D. 1894, personally appeared Alexander McKinney and Lucilla McKinney, his wife, known to me to be the identical persons who are described in, and who executed the within mortgage, and acknowledged the same to be their voluntary act and deed. In testimony whereof I have hereunto subscribed my name and affixed my official seal on the day and year above written. D. T. Taylor, Notary Public." It was authenticated by the impression of his official seal on which was engraved the words: "D. T. Taylor—Notarial Seal—Sheridan County, Nebraska." This fully complied with the mandatory provisions of the statute as it stood prior to the amendment of 1893, and is, according to the rule announced in *Weeping Water v. Reed, supra,* a valid authentication. It must be observed that the amendment requiring the notary to write under his official signature the date of the expiration of his commission applies to, and is contained in, the optional or permissive part of the statute, and therefore a failure to literally comply with it should not render the authentication of the instrument void. Indeed, we think it may be presumed that if the legislature had so intended it would have been so expressed by the amendment. Where an acknowledgment is actually taken

by an officer, having power to act, who certifies the fact in due form and authenticates his act in the manner provided by law, it would be unreasonable to hold, in the absence of a statute requiring it, that his failure to state that his commission had not expired renders the acknowledgment void. If the commission of a notary has in fact expired, and he has no power to take an acknowledgment, his statement that it is still in force cannot serve to change the existing fact or validate his action. On the other hand if he is still such officer, and has the power to perform the official act, his action is valid, without regard to his statement or declaration concerning that fact. And so the courts have established a liberal and reasonable rule, as we shall presently see, governing such matters. In *Lake Erie & W. R. Co. v. Whitham*, 155 Ill. 514, it was said: "As he professes, in the body of his certificate, to be a notary public, and to be acting officially, we are of the opinion that the omission of the words 'Notary Public' after his signature cannot have the effect of rendering his certificate invalid." Indeed, the general rule is that, where the official character of the acknowledging officer appears in the body of the certificate, it need not appear in the subscription. In *Goree v. Wadsworth*, 91 Ala. 416, the court held that a certificate made by a notary public and attested by his official seal was self-proving. And it has been held that even the body of the instrument may be looked to in order to ascertain the character of the acknowledging officer, and if discoverable there it is sufficient. In *Owen v. Baker*, 101 Mo. 407, a deed was held good where the acknowledging officer, who was county clerk and recorder, signed the acknowledgment as recorder, a recorder having no authority under the statute to take acknowledgments, while the county clerk had; thus holding, in effect, that the official designation of the character of the acknowledging officer was immaterial if the person in law had authority to take the acknowledgment. This case collects the authorities from other jurisdictions holding to the same effect. It follows that the acknowledgment in the case

at bar, being at most only irregular, should be upheld. Again, it is provided by section 10213, Ann. St., that "every deed acknowledged or proved, and certified by any of the officers before named * * * may be read in evidence without further proof, and shall be entitled to be recorded." It is also provided by section 10220 of said statutes: "It shall be no objection to the record of a deed that no official seal is appended to the recorded acknowledgment or proof thereof if, when the acknowledgment or proof purports to have been taken by an officer having an official seal, there be a statement in the certificate of acknowledgment or proof that the same is made under his hand and seal of office, and such statement shall be presumptive evidence that the affixed seal was attached to the original certificate." For the foregoing reasons we are of opinion, that the record of the mortgage was properly received in evidence.

Having reversed our former judgment on this point, we are now required to try the case *de novo*, and determine for ourselves the issues raised by the pleadings. The defense interposed by defendant Lucilla McKinney is a general denial, accompanied by an allegation that she was the wife of Alexander McKinney; that the land described in the purported mortgage was their family homestead; that D. T. Taylor, the notary public, who claims to have taken her acknowledgment to the purported mortgage, was the agent of the original mortgagee; and the execution and acknowledgment of the mortgage is thus put in issue by her. The record of the mortgage having been properly received in evidence, it carries with it all of the presumptions, and is entitled to the same evidential weight which would accompany the original instrument if it had been produced at the trial. The rule is that a certificate of acknowledgment of a deed or mortgage in proper form can be impeached only by clear, convincing and satisfactory proof that the certificate is false and fraudulent. *Phillips v. Bishop,* 35 Neb. 487; *Pereau v. Frederick.* 17 Neb. 117; *Insurance Co. v. Nelson,* 103 U. S. 544; *Crane v. Crane,* 81.

Ill. 165; *Hceter v. Glasgow*, 79 Pa. St. 79; *Gabbey v. Forgeus, Adm'r*, 38 Kan. 62; *Bailey, Wood & Co. v. Landingham*, 53 Ia. 722; *Smith v. Allis*, 52 Wis. 337; *Johnson v. Van Velsor*, 43 Mich. 208. In *Russell v. The Baptist Theological Union*, 73 Ill. 337, it was said: "It is a rule that the acknowledgment of a deed cannot be impeached for anything but fraud, and in such case the evidence must be clear and convincing beyond a reasonable doubt; and whilst the making of a false certificate is a fraud upon the party against whom it is perpetrated, yet the mere evidence of the party purporting to have made the acknowledgment cannot overcome the officer's certificate, nor will such evidence, slightly corroborated, overcome it." While we think it is hardly correct to say that the evidence must exclude all reasonable doubt, yet it must, in such cases, be clear, convincing and satisfactory in its nature, and the uncorroborated evidence of the party purporting to have made the acknowledgment of the deed or mortgage has never been held sufficient to overcome the officer's certificate of that fact.

With the foregoing rule in view, we come now to consider the evidence contained in the record. In the deposition of the defendant Lucilla McKinney, touching the question of the execution of the acknowledgment of the mortgage, we find the following: "Q. In March, 1894, do you remember of making a mortgage upon this land to any person? A. I do not. Q. Do you remember going down to the store at that time and signing this paper under which the defendants Cuyler and Graham—Did you do so? A. I did not. If you signed such paper, and recollect of doing it, will you state if you signed it in the presence of D. T. Taylor and P. N. Serbousek, and acknowledged it to Mr. Taylor as a mortgage upon your home? A. No, sir; I did not. Q. Did you know at any time that you were signing a first mortgage on your homestead, and did you ever intend to do this, and to acknowledge it as an incumbrance or conveyance of your homestead? A. Not to my knowledge; I never did it." On cross-examination she

further testified as follows: "Q. You stated in your direct examination that you did not remember of making a mortgage on the tract of land in controversy in this case, which has already been described in a former question. You could have executed a mortgage on said tract of land and not remember about it, could you not? A. If I should have ever done so I know I would have remembered it. Q. Do you mean to say now, Mrs. McKinney, with certainty, that you never signed a mortgage to the Globe Investment Company on the tract of land in controversy in this case? A. Not to my knowledge. Q. Do you think it possible you may be mistaken about the matter, and that you may possibly have signed a mortgage on this land. A. I do not think I am mistaken." It appears that there was introduced in evidence a second or commission mortgage on the land in question, made at the same time the mortgage in controversy herein was executed, together with the note accompanying it. The witness was shown her signature attached to those papers, and she was asked whether or not she signed such papers. Her answer was: "I could not swear to it." She was then asked: "Is not that your signature?" And she answered: "I could not say." The next question was: "Do you have any recollection of signing that paper?" And her answer was: "I have not." It also appears that she denied her genuine signature to other papers in the case.

Her husband, Alexander McKinney, attempted to corroborate her evidence, and testified positively upon direct examination that she never signed or acknowledged the mortgage in question. He testified, however, on cross-examination that he had no recollection about the mortgage at all. He was then asked: "Do you say that Mrs. McKinney never signed or executed this mortgage?" And his answer was: "She states she never did." He further testified as follows: "Q. What do you say about it? I am not asking what she states about it. A. I do not know. Q. You don't know whether she did or not? A. No; I don't. Q. You don't know whether she signed it or ac-

knowledged it or not, do you? A. What do you mean by acknowledge it? * * * Q. And do you now say that Mrs. McKinney never acknowledged that paper before a notary public? A. I do; yes, sir. Q. You do? A. Yes, sir; absolutely. Q. Do you know she did not—were you present when the paper was presented to her? A. I do not know whether I was or not. I took her several papers there. Q. Were you present when this paper was presented to her? A. No, sir; I do not recollect of ever taking that paper to Mrs. McKinney to be signed at any time. Q. Somebody else may have taken it to her to sign and you not know it? A. It would be very doubtful about their getting her to sign it if they did. Q. Were you present in D. T. Taylor's office on the 8th day of January, 1894, all day? A. Well, now, I couldn't say as to that. I was there from 1886 to 1893. Of course I could not tell whether I was there that day absolutely or not. Q. Then you don't know whether Mrs. McKinney was there on that day? A. She says she wasn't. * * * Q. Do you know she did not leave home all day of the 8th of January, 1894? A. That's my recollection, all right; yes, sir." The witness further testified that he did not sign and acknowledge the mortgage in question before D. T. Taylor on the 8th of January, 1894. He also refused to acknowledge his signature to other papers in the case which were shown conclusively to have been signed by him. He was finally asked: "Q. Did you, together with Mrs. McKinney, acknowledge any mortgage on this land on the 8th day of January, 1894, to the Globe Investment Company?" His answer was: "Not to my recollection." He was then asked: "Did you sign any mortgage on that day?" And he answered: "Not that I know of."

After a careful consideration of the testimony of McKinney and his wife, we cannot say that we are impressed with its reliability or truthfulness to any considerable degree, and we are of opinion that it is not of such a positive, clear, convincing and satisfactory character as is required to overthrow the certificate of acknowledgment.

We therefore find on the issues joined for the defendants, Cuyler and Graham, for the amount now due on the mortgage set forth in their answer and cross-petition; and said mortgage is found to be a second lien on lots 3 and 4, and the south half of the northwest quarter of section 2, township 31, west of the 6th P. M., in Sheridan county, Nebraska; and, as to that part of the decree of the district court foreclosing the plaintiff's tax lien, the same is affirmed; but that part of said judgment denying any relief to the cross-petitioners, Cuyler and Graham, is reversed. A decree will be entered in this court foreclosing their said mortgage, and our former judgment herein is reversed.

JUDGMENT ACCORDINGLY.