## The Lake Erie and Western Railroad Company
### *v.*
## Eugene H. Whitham.

*Filed at Springfield April 2, 1895—Rehearing denied June 10, 1895.*

1. DEEDS—*wife's name following that of husband—effect.* It will not be intended that a wife joins in a deed only to release dower because her name appears after that of her husband, where, by the terms of the deed itself, she conveys all her interest in the land.

2. SAME—*presumption of delivery on day of date.* The presumption that a deed was delivered at its date is not· rebutted by the fact that the certificate of acknowledgment bears a later date, nor by testimony of the grantee that it did not come to his *personal* possession until after it was acknowledged, where the deed was procured by the grantee's attorney, and no evidence shows when the attorney received it.

3. SAME—*two complete descriptions in one deed.* Effect will be given to both of two complete descriptions in a deed, rejecting neither, where there is no incongruity between them, and the larger description includes the land named in the more restricted one and another tract besides.

4. EVIDENCE—*proof to overcome prima facie showing of delivery of deed.* The *prima facie* showing that a deed of land in controversy in ejectment was delivered to plaintiff before suit was brought arising from such plaintiff's testifying that he so received it, is not overcome by his admission, upon cross-examination, that he was in another town than the county seat the day the suit was brought, and received the deed there.

5. ACKNOWLEDGMENT — *omission of words "notary public," after notary's signature.* The omission of a notary to write the words "notary public" after his signature to an acknowledgment does not render the certificate invalid where, in the body of the certificate, he describes himself as a notary public, and it appears he was acting officially.

6. EJECTMENT—*sufficiency of oath as to common source of title.* A statement, on oath, by a plaintiff in ejectment, that he claimed title from a certain named source, and that as he understood it the defendant claimed from the same source, is sufficient, under the statute, if not denied, to relieve such plaintiff from tracing title beyond such source.

7. REAL ESTATE—*easement cannot be created by parol.* An easement or other incorporeal hereditament in lands cannot be created by parol, but only by grant, or by prescription which presumes a grant.

8. Plats—*will not operate to donate lands to a railroad company unless so marked.* Leaving strips of land upon either side of a railroad right of way in a plat, with the then intention of the owner that such strips shall belong to the company, will not operate as a dedication or conveyance where such strips are not "marked or noted on the plat as donated or granted," as required by the statute concerning plats.

9. Dedication—*at common law can only be made to the public.* A common law dedication of lands, to be effectual, must be made to the public.

10. Same—*railroad company cannot take land by common law dedication.* A railroad company, though engaged in the public employment of a common carrier, is a private corporation, and cannot acquire title to or an easement in lands by a common law dedication, which can only be for a purpose strictly public.

Appeal from the Circuit Court of Vermilion county; the Hon. Ferdinand Bookwalter, Judge, presiding.

H. M. Steely, for appellant:

If there was a dedication to and acceptance by the original company, then the question as to whether or not the present company had title or right to possession cannot concern appellee, as that is a question to be adjusted between such former company and appellant. *Kirby* v. *Railway Co.* 109 Ill. 417; *Sands* v. *Kagey*, 150 id. 116.

While the general rule is that the legal title must prevail in ejectment, yet where it is shown that the consideration has been paid or performed and possession taken with the express or implied consent of the former owners, defendant can successfully defend the action on these grounds. *Railway Co.* v. *Dimick*, 144 Ill. 641; *Railroad Co.* v. *Hays*, 119 id. 503 ; *Sands* v. *Kagey*, 150 id. 109 ; *Kilgour* v. *Gockley*, 83 id. 109 ; *Deere* v. *Cole*, 118 id. 165 ; *Staley* v. *Murphy*, 47 id. 241; *Stow* v. *Russell*, 36 id. 36 ; *Cobb* v. *Lavalle*, 89 id. 331.

Appellant's possession and use of this land for railroad purposes were notice to the world of the title or equities held or claimed by the company. *Sands* v. *Kagey*, 150 Ill. 109.

A dedication may be made by parol declarations, or acts and declarations without writing, no particular form being required to establish its validity, it being purely a question of intention ; or it may be by survey and plat alone, without any declaration, either oral or on the plat, when it is evident from the face of the plat that it was intended to set apart certain grounds for a certain purpose. *Maywood Co.* v. *Maywood,* 118 Ill. 61; *Godfrey* v. *Alton,* 12 id. 30 ; *Warren* v. *Jacksonville,* 15 id. 235 ; *Alvord* v. *Ashley,* 17 id. 369 ; *Davidson.*v. *Reed,* 111 id. 167.

Dedications can be established in any conceivable way by which the intention of the dedication can be evinced, as by user and other matter *in pais,* or estoppel, and no lapse of time is necessary to perfect it. *Smith* v. *Town of Flora,* 64 Ill. 93 ; *Waugh* v. *Leech,* 28 id. 488; *Reed* v. *Chicago,* 38 id. 322 ; *Peyton* v. *Shaw,* 15 Ill. App. 192 ; *Town of Whitfield* v. *Horrocks,* id. 315 ; Newell on Ejectment, p. 688, sec. 67, note 1.

If a dedication appears to be beneficial and necessary for the purpose for which it is used, acceptance is presumed from slight circumstances, and such acceptance is indicated by actual use for the purpose indicated. *Mann* v. *Elgin,* 24 Ill. App. 419 ; *Maywood Co.* v. *Maywood,* 118 Ill. 70 ; *Buchanan* v. *Curtis,* 25 Wis. 99 ; *Smith* v. *Town of Flora,* 64 Ill. 93.

Railroad companies are public corporations, and their roads are declared by the constitution (art. 11, sec. 12,) to be public highways.   Under the statutes of this State they are capable of taking lands for railroad purposes by dedication.   Rev. Stat. 1893, sec. 3, chap. 109; *Morgan* v. *Railroad Co.* 96 U. S. 716.

A dedication, once made, cannot be recalled.   The intention of the owner, at the time it was made, is alone to be considered, and not his intention at any subsequent time.   *Rush* v. *Rock Island,* 5 Biss. 95 ; *Adams* v. *Railroad Co.* 11 Barb, 414; Newell on Ejectment, p. 688, sec. 70.

A dedication may be made to a body incapable of taking by grant, and when accepted it becomes irrevocable. *Smith* v. *Heath*, 102 Ill. 142; *Smith* v. *Town of Flora*, 64 id. 93.

It matters not that the agreement was by parol,— possession and performance on one side took it out of the Statute of Frauds, (*Bragg* v. *Olson*, 128 Ill. 544; *Morrison* v. *Herrick*, 130 id. 641,) and this court has held that such facts constitute a complete defense to an action of ejectment by the former owners or their grantees, and injunction will not lie. *Stow* v. *Russell*, 36 Ill. 36; *Kilgour* v. *Gockley*, 83 id. 109; *Cobb* v. *Lavalle*, 89 id. 331; *Railroad Co.* v. *Karnes*, 101 id. 403; *Turpin* v. *Railroad Co.* 105 id. 11; *Kirby* v. *Railway Co.* 109 id. 413; *Railroad Co.* v. *Hay*, 119 id. 503; *Sands* v. *Kagey*, 150 id. 109; *Staley* v. *Murphy*, 47 id. 241.

In ejectment, at common law, an equitable title is not available either as a cause of action or as a defense. (*Brill* v. *Stiles*, 35 Ill. 305.) But a defense founded upon an equitable estoppel will be permitted, even in a court of law. *Kirk* v. *Hamilton*, 102 U. S. 68; *Dickerson* v. *Calgrove*, 100 id. 578.

Salmans & Draper, and C. A. Allen, for appellee:

The question of dedication was one of fact, and it is a well established rule of law that "the fact of dedication, upon a conflict of testimony, is left for the jury, and their finding will not usually be disturbed." *Daniels* v. *People*, 21 Ill. 439.

The doctrine of *estoppel in pais* is available only in equity, and not in an action of ejectment. *Mills* v. *Graves*, 38 Ill. 456, and cases cited; *Blake* v. *Fash*, 44 id. 302; *Railway Co.* v. *Railway Co.* 137 id. 9; *Wilson* v. *Cooper*, 104 id. 235.

Mr. Justice Bailey delivered the opinion of the court:

This was a suit in ejectment, brought by Eugene H. Whitham, against the Lake Erie and Western Railroad Company, to recover a strip of land forty or fifty feet in width and nine hundred and sixty-five feet long, lying

between the north line of blocks 13 and 14, in the village of Rankin, Vermilion county, and the north line of the south-east quarter of section 11, township 23, north of range 14, west, being a part of the land claimed by the defendant as its right of way. The suit was brought November 29, 1892, the declaration consisting of one count, which describes the premises, and alleges that the plaintiff is the owner thereof in fee simple. The defendant pleaded not guilty, and at the trial, which was had at the May term, 1894, of the circuit court, a verdict was rendered finding the defendant guilty, and finding that the title to the premises established by the plaintiff was in fee simple. Upon this verdict the court, after denying the defendant's motion for a new trial, gave judgment in favor of the plaintiff, and the defendant now brings the record to this court by appeal.

It appears from the evidence that the village of Rankin was laid out and platted about November 14, 1872, and that the plat, with the accompanying certificates, was filed for record in the office of the recorder of Vermilion county November 28, 1872. The railroad in question, of which the defendant is now the owner, is located near the north line of the land in controversy, and seems to have been built and in operation before the plat of the village of Rankin was filed for record, it having been built by a railroad company of which the defendant is or claims to be the successor. At the point in question the railroad runs east and west, and is crossed by Main street, a street running north and south, near the center of the village. At the time the village was platted, William A. Rankin and David Rankin, for whom the village was named, owned the west half of section 12, on which that part of the village east of Main street was platted, while George Guthrie owned the north-east quarter of section 11, or all that part of the plat lying west of Main street and north of the railroad, and the heirs of Stanton S. Johnston, deceased, owned the south-east quarter of sec-

tion 11, being that part of the land included in the plat lying west of Main street and south of the railroad.

The evidence tends to show that, at the time the village of Rankin was platted, there was great rivalry between Rankin and a small place about a mile and a half further west, known as Pellsville, as to which should secure the railroad station, and that the owners of the land embraced in Rankin were disposed to offer very considerable inducements to the railroad company for the purpose of securing the station for their own village. William A. Rankin seems to have been employed by the Johnston heirs in platting their part of the village, and the evidence tends to show that they agreed to give him each alternate two lots throughout the plat if he would secure the station; that Rankin, acting for the Johnston heirs, had the surveying done, some of the heirs being present and one or more of them assisting in making the survey.

The evidence further tends to show that the proprietors of the several tracts of land to be included in the plat instructed the surveyor to leave sufficient ground on each side of the railroad track to make, with the right of way already acquired by the railroad company, a strip one hundred feet in width, and that in pursuance of such instructions he surveyed and laid out the grounds, and made the plat so as to leave one hundred feet on each side of the railroad through the entire village, and there is evidence tending to show that it was the intention of the parties that the ground so left should be railroad ground, and should be occupied and used for railroad purposes.

The strips of land thus left not being "marked or noted on the plat as donated or granted" to the railroad company, it is not, and can not well be, claimed that the plat operated as a conveyance thereof to the railroad company under the provisions of section 3 of chapter 109 of the Revised Statutes, but it is contended, on behalf of

the company, that the plat, when considered in connection with the evidence of the cotemporaneous and subsequent acts and conduct of the parties, tends to establish a common law dedication of the land to the company, for its use as a part of its right of way. This contention, which raises one of the principal questions presented by the record, will be more fully noticed hereafter.

The plaintiff, to establish title in himself to the lands in question, offered in evidence certain proceedings in chancery between the heirs of Stanton S. Johnston, deceased, for partition, in which it was alleged in the bill and found by the decree that Stanton S. Johnston, in his lifetime, was seized of an equitable estate in these lands by virtue of a contract for the sale thereof to him by the Illinois Central Railroad Company, and that after his death certain deeds were executed, by which the legal title was conveyed to his heirs. Evidence was also given, not only that his heirs were thus claiming title in fee to the land, but that before the village of Rankin was laid out and platted they were in possession of it. The plaintiff then offered in evidence quit-claim deeds to himself from each of the heirs of Johnston, purporting to convey to him all their right, title and interest in the land. Several specific objections to these deeds were raised, all of which were overruled, and the deeds were read in evidence. The decisions of the court overruling these objections are now assigned for error.

Harriet M. Hutchinson is one of the heirs of Johnston, and one of the deeds offered in evidence purports to be executed by Joseph M. Hutchinson and Harriet M., formerly Harriet M. Johnston, his wife, party of the first part, to the plaintiff, party of the second part, and in which the party of the first part, for a certain consideration therein mentioned, convey and quit-claim to the party of the second part all interest in the land in question. It is objected that because the name of the wife is placed after that of her husband it will be intended that

she joined with her husband merely for the purpose of waiving her dower, and not for the purpose of conveying her estate. It is sufficient to say that, even if such intendment could arise under other circumstances, it is completely negatived here by the very terms of the instrument, since she appears in the deed as one of the parties conveying and quit-claiming all interest in the land. To hold otherwise would do violence to the express language of the deed.

Again, it is objected that the certificate of acknowledgment is insufficient because the officer before whom the acknowledgment was taken, though describing himself in the body of the certificate as a notary public, omitted to write the name of his office under his official signature. As he professes, in the body of his certificate, to be a notary public and to be acting officially, we are of the opinion that the omission of the words "notary public" after his signature cannot have the effect of rendering his certificate invalid. His official character, and the fact that he was acting officially, we think sufficiently appear. The objections to this deed were properly overruled.

A deed from William A. Rankin and Mary D. Rankin, his wife, bearing date November 23, 1892, was objected to on the ground that the certificate of acknowledgment bears date December 2, 1892, the latter date being after the suit was commenced. The presumption is that the deed was delivered on the day of its, date, and the fact that the certificate of acknowledgment bears a later date is not sufficient to rebut such presumption. (*Deininger* v. *McConnel*, 41 Ill. 227; *Jayne* v. *Gregg*, 42 id. 413 ; *Blake* v. *Fash*, 44 id. 302; *Hardin* v. *Crate*, 78 id. 533.) There is evidence tending to show that the deed was executed and acknowledged in a different county from that in which the plaintiff resided, and that its execution was procured for him by his attorney in that county, and while he testifies that it did not come into his personal possession

until after it was acknowledged, there is no evidence, outside of that furnished by the dates appearing upon the instrument itself, tending to show the date of its delivery to his attorney. To rebut the presumption of its delivery on the day of its date, it was necessary, under these circumstances, to produce some evidence as to the time of its delivery to the plaintiff's attorney, and there being none, the presumption can not be said to be rebutted.

It is next claimed that the deed from Jane M. Johnston, William O. Johnston, Scott Johnston and Martha E. Johnston, to Benjamin R. Cole, conveyed the interest of the grantors in only a part of the land in controversy, and, consequently, that the plaintiff has failed to show that he has become vested with their title to the residue. This deed purports to convey and quit-claim all the interest of the grantors "in the following described real estate." Then follow two descriptions, the first of which describes, by metes and bounds, the land lying between block 14 and the north line of the quarter section. The other description, which in the deed appears in a separate sentence, is as follows: "Being all of that part of above described quarter section lying between the north line of said quarter section and blocks 13 and 14, in the village of Rankin." Here are two descriptions, each complete in itself, one embracing only that portion of the quarter section lying north of block 14, and the other that portion lying north of both blocks. It seems plain that, under these circumstances, effect must be given to the larger as well as to the more restricted description. Such interpretation does no violence to either, but gives full force to both. Were there any necessary incongruity between the two, the more restricted description might perhaps be rejected, so long as the conclusion fairly arises, from the entire instrument, that the grantors intended to convey their interest in the whole tract; but there being no such incongruity between them, nothing

need be rejected, and all parts of the description may be retained and given force.

It is also claimed that the deed from Cole and wife to the plaintiff is not shown to have been delivered before the commencement of the suit. That deed bears date November 23, 1892, and the certificate of acknowledgment is dated November 29, 1892. The suit was brought on the date last named, and the plaintiff testifies that the deed was received by him directly from Cole, and that he received it the day it was acknowledged, but that it came to his hands before the suit was commenced. His testimony upon this point is sought to be weakened, on his cross-examination, by eliciting from him the fact that he, on the day the deed was received, was in Rankin, while the suit was commenced at Danville, and therefore that he could not have known the exact time of the issuing of summons in the suit. He, however, persists in saying that according to his understanding the suit was not commenced at Danville until after the deed was delivered to him at Rankin, and there being no evidence to the contrary, we think his testimony, while not very satisfactory, is sufficient to show, *prima facie*, that the deed came to the plaintiff's hands before the summons in the suit was issued.

It is contended, in the next place, that the verdict and judgment for the plaintiff are unsupported by the evidence, because the plaintiff failed to deduce his title from the United States, or any other original source of title. It is claimed, on the other hand, that a *prima facie* title is shown by deducing title from the Johnston heirs, who are shown to have been in possession of the land claiming title in fee. The plaintiff also sought to bring his case within the provisions of section 25 of chapter 45 of the Revised Statutes. Upon the trial he stated, on oath, that he claimed title from the Johnston heirs, and that, as he understood it, the defendant claimed title from the same source. This, we think, was sufficient to

require the defendant, or its agent or attorney, to deny, on oath, that it claimed title through such source, or that it claimed title through some other source, in order to compel the plaintiff to deduce title from any other than such common source. No such denial was made, on oath, by or on behalf of the defendant, and we think, therefore, it was sufficient, *prima facie*, for him to trace his title to such common source.

The principal contention on the part of the defendant, however, seems to be, that the Johnston heirs, at the time the village of Rankin was laid out and platted, intended to dedicate, and in fact dedicated, the premises in question to the railroad company of which the defendant is the successor, to become a part of its right of way, to be used for railroad purposes. It seems to be conceded that the strip of land in question was not "marked or noted on the plat as donated or granted" to the railroad company, and it is not, and can not well be, claimed that the plat operated as a conveyance thereof to the railroad company under the provisions of section 3 of chapter 109 of the Revised Statutes, but it is insisted that the plat, when considered in connection with the evidence of the cotemporaneous and subsequent acts and conduct of the parties, tends to show a common law dedication of the land to the company.

The evidence bearing upon the question of a common law dedication is conflicting, some of the witnesses, especially some of the Johnston heirs themselves, testifying positively that there was no intention on the part of the heirs to make such dedication; but as the question is presented here, we need consider only the evidence introduced on the part of the defendant to show such dedication.

The county surveyor who made the survey and plat was examined as a witness, and his testimony, so far as it relates to the strip taken from the land belonging to the Johnston heirs, being the premises in controversy in

this suit, is as follows : "I was county surveyor at the time the village of Rankin was platted and laid out. I made the survey and plat.   I recollect the circumstances of there being a strip of land left north of blocks 13 and 14, in that plat.   There was a strip one hundred feet wide left along each side of the center of the road as it was then running.   In making that plat I made a plat of the whole town.   That strip was left at the time, as I understood it, for the railroad company.   I think some of the Johnston heirs were assisting in making the plat.   I think William O. Johnston carried chain for me. That strip has been used for railroad grounds ever since, so far as I know.   I have been back there since that time every year or two, at different times.   Mr. Rankin was overseeing and looking after the platting of the grounds. He employed me, and paid me for doing the whole work. He was with me during the platting.   I suppose he was acting for the Johnston heirs in the platting of the ground. He was there all the time, and the Johnston heirs, or some of them, were there all the time while I was acting.   They told me to leave one hundred feet on each side of the track—that they were willing to give almost any amount of land to the railroad to get the station there—and I did so, and that was made and signed by the different parties, and recorded.   Why, certainly it was left for railroad ground, and that was the purpose of it.   I do not remember any particular conversation with the Johnston heirs, it being twenty-two years ago.   They were all mighty anxious to get the town there, and they were fighting the town a mile distant.   There was a great rivalry at that station and the station a mile or a mile and a half west of it, for the town.   They were each fighting to get the station.   There was great rivalry.   I do not know what inducements they had offered, but they were willing to give most anything to the railroad to locate the station there.   They were willing to give this ground and anything else."   Again, on cross-examination he says : "I don't

know that anything was said by the owners as to what use that land was to be put to. I know that it was not left for the owners to use themselves. I know it was called railroad ground. I understood by that, that it was for the exclusive use of the railroad."

The evidence shows that shortly after the plat was recorded the railroad company entered into possession of the strip of land in controversy and built a side-track, and also erected stock pens upon it, and that it and its successors have continued to occupy and use it from that time up to the commencement of this suit,—a period of between nineteen and twenty years,—claiming it as railroad property. It also appears that from the time the plat was recorded the Johnston heirs made no claim to this strip of land until a short time before the commencement of this suit, when, for a nominal consideration, they quit-claimed their interest to the plaintiff.

Upon this evidence the defendant's counsel asked the court to give to the jury various instructions upon the hypothesis of a common law dedication, but the court refused to give any instruction of that character as asked, but modified them so as to limit their scope to a dedication by plat, thereby, in effect, refusing to instruct the jury that the defendant was capable of acquiring lands by a common law dedication. Thus, the following instruction, being asked, was modified by inserting therein the words in italics, and given as thus modified:

"The court instructs the jury that a railroad corporation is a public corporation, and is an ever-existing grantee, capable of taking lands by conveyance, or by dedication, *by plat*, by the owner, for railroad purposes."

The following instruction also was asked on behalf of the defendant:

"The court instructs the jury that the word 'dedication,' used in these instructions, means an appropriation, or devotion or setting apart, by the former owners, of the land in question for railroad purposes. A dedication

of land may be made by deed or writing, or it may be by acts or parol declarations of the owners, or both, without writing; and no particular form is required to establish its validity, it being purely a question of intention. A dedication may also be made by survey and plat alone, without any declaration, either oral or on the plat, when it is evident from the face of the plat that it was intended to set apart certain ground for the use of the public or for the use of a railroad company."

This instruction the court refused to give as asked, but modified it as follows, and gave it to the jury so modified:

"The court instructs the jury that the word 'dedication,' used in these instructions, means an appropriation, or devotion or setting apart, by the former owners, of the land in question for railroad purposes, *by a plat.* A dedication may be made by survey and plat alone, without any declaration, either oral or on the plat, when it is *noted on* the face of the plat that it was intended to set apart certain grounds for the use of the public or for the use of *a certain corporation."*

Other instructions, involving similar principles, were modified in a similar manner. The rule which the trial court thus intended to lay down manifestly was, that while a railroad company may take lands by dedication where the dedication is by plat executed in the form prescribed by the statute, it is incapable of taking lands by dedication in any other way, and especially that it can not become the beneficiary of a common law dedication. That there was evidence tending to show a common law dedication to the railroad company, if such dedication is legally possible, can not be doubted, and the question presented is, whether the court decided correctly in holding that no such dedication can be effectual as vesting a railroad company with the title or right of possession of the land attempted to be so dedicated to its use.

It is doubtless true that any person who is the owner of land may, by virtue of his absolute dominion over it, donate or dedicate it to whomsoever he pleases. He may give it to the public, to a body corporate capable of holding it, or to a natural person, for such purposes, either public or private, as the donor may see fit to appoint. But to render such gift effectual the owner must grant or convey to the donee the land, or such interest therein as he wishes to donate, either by deed, or by some equivalent mode of conveyance known to the law. Except in what are known as common law dedications, parol gifts of land, or of easements therein, are ineffectual, it being elementary law that the title to lands cannot be transmitted *inter vivos* except by deed or its equivalent, and that easements or other incorporeal hereditaments can not be created by parol, but only by grant, or by prescription, whereby a conclusive presumption of a previous grant is raised.

The provisions of chapter 109 of the Revised Statutes, entitled "Plats," furnish no exception to this rule,—they merely create a new mode of conveyance. By force of those provisions the owner of the land, by platting it and marking or noting on the plat that portions of the land are donated or granted to the public, to a corporation, to a religious society or to a natural person, in legal effect conveys the portions of the land so marked or noted to the designated donee or grantee, for the uses and purposes therein indicated. By this statute the purposes for which an owner of land may dedicate or grant it away to others are not enlarged, restricted or modified, but a new mode is provided by which his intention to grant or convey his land may be carried into effect.

But by the rules applicable to what are known as common law dedications, lands or easements therein may be dedicated to the public, so as to become effectually vested, without the aid of any conveyance. It may be done in writing, by parol, by acts *in pais*, or even by ac-

quiescence in the use of the easement by the public. All that is necessary is, that the intention to dedicate be properly and clearly manifested, and that there be an acceptance by or on behalf of the public. When that is done, the right or easement becomes instantly vested in the public.

But dedications of this character, to be effectual, must be to the public. (Washburn on Easements, 205.) At the common law they were confined to the purpose of highways, but in this country the doctrine has a wider application, and its limits have been judicially defined as extending to public squares, common lots, burying-grounds, school lots, and lots for church purposes and pious and charitable uses generally, and in many cases where the use was, either expressly or from the necessity of the case, limited to a small portion of the public. (5 Am. & Eng. Ency. of Law, 416, and authorities cited in notes.) But we are referred to no decision, and we think none can be found, where a dedication of this character, made for any other purpose than one strictly public, has been sustained.

Railroad companies, though engaged in the public employment of common carriers, are essentially private corporations, and while the lands composing their rights of way are acquired for a public purpose, the ownership of such lands, when acquired, is private. In no proper sense can such corporations be regarded as constituting the public, or a portion of the public, to which common law dedications of land can be made. Donations or gifts of land can undoubtedly be made to them where the donor sees fit to effectuate his gift by some one of the ordinary modes of conveyance, and the donation can also be made by plat, where the donor sees fit to mark or note on his plat that the land which he wishes to give to such corporation is donated or granted to it; but we find no authority in the law for holding that a railroad corporation may acquire title to or an easement in land by common

155—34

law dedication. Neither the researches of counsel nor our own have brought to light a single case sustaining such dedication, and we think none can be found.

Counsel seems to argue that because, under the statute, gifts or grants can be made to railroad companies and other corporations by plat, it should be held that common law dedications may be made in like cases. This by no means follows. As we have already said, the statute makes the plat a mode of conveyance, thus enabling the donor of lands to accomplish, by its means, what, independently of the statute, he might have done by any other appropriate conveyance; but it in no way enlarges, either expressly or by implication, the class of cases where an easement may be created in favor of the public by common law dedication. Moreover, the reasoning sought to be employed would prove too much. The statute makes the plat a conveyance, not only to the public and to corporations, but also to natural persons, and the same principles of analogy which would extend the doctrine of common law dedications to railroad companies would make it apply as well to natural persons,— a result for which we think no one will contend.

The case of *Morgan* v. *Chicago and Alton Railroad Co.* 94 U. S. 716, upon which much reliance seems to be placed, will be found, on examination, to have been a case of a dedication or conveyance of certain lands to the railroad company by plat, and the question of a common law dedication, and whether such dedication could be made to a railroad company, was not involved. That case, therefore, cannot be regarded as an authority upon the questions presented here. It should also be noticed that the suit was in equity,—a forum where the doctrine of equitable estoppel has full play, and where there is always a strong indisposition to enforce stale claims, although they may not be barred by limitation, while this suit is in ejectment, where legal titles, only, are regarded.

The case of *Smith* v. *Town of Flora*, 64 Ill. 93, to which we are referred, involved a question of a dedication of strips of land on each side of the right of way of the railroad company to the municipal corporation, and no question of a common law dedication to a railroad company was raised or decided.

We fail to find in the record any substantial error, and the judgment of the circuit court will accordingly be affirmed.

*Judgment affirmed.*