## CRARY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

1. The lessee of school lands is not the "owner," within the meaning of Civ. Code. §§ 542-544, providing that, when the "owner" of any tract of land abutting on a railroad constructs a fence about said tract on all sides except along the railroad, it shall be the duty of the railroad company to construct a fence along its right of way, and that if such company, on notice, refused to construct such fence, the owner may construct it, and recover the cost thereof.

2. The fact that a railway company constructed a fence along its right of way adjoining land leased by plaintiff did not estop it from showing

that the law did not require it to do so, and that the plaintiff, as lessee, had no right to assume that the company would maintain the fence in good repair.

3. In an action against a railway company for the killing of animals on the track, evidence examined, and held insufficient to carry the question of defendant's negligence to the jury.

(Opinion filed June 11, 1904.)

Appeal from circuit court, Hanson county; Hon. FRANK B. SMITH, Judge.

Action by Beach Crary against the Chicago, Milwaukee & St. Paul Railway Company to recover for stock alleged to have been killed by an engine of defendant company. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

*E. E. Wagner*, for appellant.

*Preston & Hannett*, for respondent.

CORSON, P. J. This action was commenced in a justice court to recover the value of a steer alleged to have been killed by an engine of the defendant company, and in that court a judgment was rendered in favor of the plaintiff. From this judgment the defendant appealed to the circuit court, where a verdict was directed in favor of the defendant, and from this judgment and an order denying a new trial the plaintiff has appealed to this court.

The steer was killed on a school section, a part of which the plaintiff had leased. The defendant erected a fence in 1900 along the south side of its right of way diagonally across the school section, and the plaintiff had from 100 to 150 head of stock pasturing on the south side of the track in an inclosed pasture. The animal that was killed and some others had ap-

parently escaped from the pasture through the wire fence built by the defendant company along its right of way. The motion to direct a verdict in the court below was upon the fol lowing grounds: "(1) The undisputed testimony shows that the defendant company owed no duty to this plaintiff to fence its right of way at the point where this accident occurred. (2) The undisputed testimony discloses that the plaintiff was not the owner of the premises at any time, and therefore had no right to require of defendant that it fence its right of way. (3) The defendant is not required, under any circumstances, to fence its right of way on a school section at the instance of a lessee. (4) The undisputed testimony discloses that the accident was unavoidable, that it could not have been avoided, and that no negligence has been shown on the part of the defendant company in the killing of this animal." The respondent insists in support of the ruling of the court below in directing a verdict that these propositions are correct, and that, therefore, the court was right in directing a verdict. On the other hand, the appellant contends (1) that the railroad company is required by section 542 of the Civil Code to fence its right of way across the school section at the instance of the lessee of the school lands; (2) that, having constructed and assumed to maintain a fence along its right of way in good repair and condition at the request of the plaintiff, and having permitted the plaintiff to join his fence thereto, and having permitted the plaintiff to rely thereon, the defendant, regardless of whether it could have compelled the plaintiff to construct such fence, cannot be heard to deny its liability for damages resulting from the negligence of its employes in failing to keep the fence in good repair and condition; (3) that the testimony was

conflicting as to the question of negligence on the part of the defendant, or it was such that different impartial minds might fairly draw different conclusions and inferences therefrom, and the case should therefore have been submitted to the jury.

It is quite apparent from the ruling of the learned circuit court that it was of the opinion that lessee was not the owner of the land within the meaning of section 542 of the Civil Code. That section provides: "Whenever the owner of any tract of land abutting against any line of railroad within this state shall desire to enclose any such tract of land for pasturage and shall construct a good and sufficient fence about said tract of land on all sides except along the side abutting against said line of railroad, it shall be the duty of such railroad company to construct" a good and substantial fence along its right of way. Section 543 provides that written notice shall be given by the owner to the railroad company, requiring it to build such fence, and it provides: "It shall be the duty of such railroad company to construct and complete its portion of such fence within 60 days after the service of such notice." Section 544 provides: "If any railroad company shall neglect or refuse to comply with any of the requirements of this act, it shall be lawful for the owner of such tract to construct or repair the fence along the line of such railroad, and the railroad company shall be liable to the owner thereof, to an amount not exceeding one dollar and twenty-five cents per rod, to be recovered in a civil action and such railroad company shall be liable for all damages accruing by reason of such neglect or refusal." It is insisted by the respondent that a lessee of school lands is not the owner within the meaning of these sections, and hence that the company owed to the lessee no duty either to construct a fence

along the line of its right of way or to keep the same in repair. We are inclined to adopt the view of the respondent that the term "owner," as used in this section, must be construed to mean the owner of the fee, and does not include a lessee. It will be noticed that it is only when the owner shall construct a good and sufficient fence about his tract of land upon three sides that he can require the railroad company to construct a fence along its right of way. It could hardly have been contemplated by the Legislature in adopting this provision that a mere lessee who constructs a temporary fence around a tract of land for pasturage shall have the right to call upon the railroad company to build a good and substantial fence along its right of way. The term "owner" is not defined by our Code, but where a lessee is intended to be included within the term "owner" the Code usually so provides in the law itself. By section 817 of the Code of Civil Procedure it is provided that parties owning animals trespassing upon lands shall be liable to the owner of said lands for the damages sustained. And by section 818 it is provided, "Any person occupying or cultivating lands shall be considered the owner thereof in any action under the provisions of the last section." Again by section 710 of the Code of Civil Procedure the Code defines who shall be regarded as owners of property in actions to enforce mechanics' liens. We are of the opinion that the term "owner," as used in the law we are considering, is used in its ordinary sense of "owner in fee." That being so, the defendant was under no obligation to construct or maintain the fence along its right of way in order to protect the plaintiff's stock from trespassing upon such right of way. Whether, therefore, the fence was sufficient or insufficient to restrain the plaintiff's stock is not

18 S. D.—16

material in this case, for, if the railroad company was not required by law to fence its right of way, it was not bound to construct or maintain any such fence, and the fact that it did construct a fence does not estop it from showing that the law did not require the same, and that the plaintiff as lessee had no right to assume that the company would maintain the fence in good repair.

This brings us to the consideration of the question of whether or not there was such a conflict in the evidence as to negligence of the defendant as to require the court below to submit the case to the jury. The defendant, in order to rebut the presumption of negligence arising from the killing of the animal, called as a witness one Beebee, who testified that he was a locomotive engineer, and had been in the employ of the defendant for a little more than 25 years; that in 1901 he ran between Mitchell and Sanborn on a passenger train; that he was engineer in charge of the train that ran against the steer killed; that the killing occurred about 3 o'clock in the afternoon, and that the train was running at about the rate of 40 miles an hour when the animal was struck; that the train approached the point where the steer was struck on what is known as a "reverse curve"; that the track curved slightly to the north and west, then to the west again, and just east of where the steer came out of a narrow draw probably 10 or 12 feet deep there is a cut probably 8 or 10 feet deep; that the steer came out of the draw when the train was perhaps 75 feet from him; that the witness was looking ahead when the train came around the curve; that the train was from 60 to 70 feet from the animal when it came out of the draw or cut onto the track; that the witness could not have seen the animal at any

greater distance approaching the track than when he first observed it, as it was behind the embankment, out of sight, coming out of the draw; that that was the first he saw of it; that there is no crossing nearer than about three-quarters of a mile east and a mile west; that when he first saw the animal the fireman was in the tender.   He further testified he had no notice of the approach of the animal until he was within 60 or 70 feet of the point where it was struck, and says:   "I did not observe any stock other than this one prior to the time I saw it. I had no time to do anything to avoid this accident after dis-covering the animal.   My engine was equipped with good whistle, good bell, first-class air brakes connecting the entire train.   My air brakes were working at that time.   After I discovered the animal, before I struck it, I could not have slack-ened the speed before striking it.   The distance was too short —want of time.   Going at 40 miles an hour, I would have had to go about 1,200 feet before I could stop the train.   It was impossible to avoid the accident.   It was a passenger train with four cars.   The animal landed on the south side of the track. It was headed diagonally across to the northwest when it came up out of the draw and I first discovered it, going toward the west bridge."   The evidence claimed as conflicting with the evidence of the engineer above given was the testimony of Mr. De Roo, who testified that he was stacking hay on some land about 15 rods from where the steer was killed, in plain view of the railroad track; that he saw the passenger train going west that afternoon; saw three head of cattle about the time the train passed along, or just prior thereto; that there was only one on the track, but two more on the bank along the fence on the north side; that he saw the animal on the track a very short

time before the train came along—it didn't seem more than a minute or two or three, perhaps; it was a very short time; that he saw an animal standing on the center of the track; that he supposed that it was the same animal that the train had hit, but he did not know; that he did not see the train nor hear it until it was right opposite him; that he did not know how long the animal stayed there on the track; did not know when it got off the track; that he recalled that he was loading hay, and saw an animal on the track, and a few minutes later saw the train coming around the curve; the animals had been on the right of way all the afternoon; that he had been over the defendant's track east of where the steer was killed, made examinations and measurements as to how far east of the point where the animal was killed a man standing on the track could see that point; that he marked the place on the track where the steer was killed, and could see it when standing on the track 900 feet east. It will thus be seen that a short time prior to the accident the witness saw an animal on the track, but whether or not it was the same animal that was killed, or as to what became of that animal, he does not pretend to know. His testimony, therefore, in no manner contradicts the testimony of the engineer, who stated that the animal that was killed by his engine came upon the track out of the draw, and from behind an embankment, when the engine was within 50 or 75 feet of the point where the animal was killed. No jury, therefore, could have properly found from the evidence of De Roo that the animal that was upon the track a short time before the train came along was the animal that was killed, as there was no evidence which would have warranted the jury in so finding.

It is further claimed that the engineer was contradicted by the evidence of De Roo and one or two other witnesses, who testified that standing upon the track they could see along the track a distance of 900 feet, but this in no manner contradicted the evidence of the engineer, as there was no evidence tending to show that there was any animal upon the track while the engine was passing over that 900 feet, for, as before stated, the animal was seen upon the track by De Roo some minutes before the train passed along.   It was not shown to have remained upon the track until the train passed, and, taking the shortest time mentioned by De Roo—one minute—as being the time he saw the animal upon the track before the train passed along, the train would have been two-thirds of a mile distant when he saw the animal, and, if the time was two, three, four, or five minutes, it would have been miles away at the time that he saw an animal upon the track.   It would appear from the evidence of De Roo and from other evidence in the case that a number of animals escaped from the pasture, presumably through a defect in the fence, and passed across the track to the north. It would seem quite consistent, therefore, with De Roo's testimony, that the animal he saw passed across the track before the train came along, and the animal that was killed, following, came upon the track precisely as stated by the engineer.   At least there is no evidence in the case tending to prove that the facts were not as stated by the engineer.   Again, the witness made no observation as to how far the engineer could have seen along that line from his usual position on the right-hand side of the cab of the engine.   The evidence of De Roo may have been strictly true, but, as we have seen, it did not in the slightest degree contradict the evidence of the engineer.

The learned counsel for the appellant contends that under the former decisions of this court in the cases of Kielback v. R. R. Co., 13 S. D. 629, 84 N. W. 192; Sheldon v. R. R. Co., 6 S. D. 606, 62 N. W. 955, and Bates v. R. R. Co., 4 S. D. 394, 57 N. W. 72, the case at bar, in any event should have been submitted to the jury. But in these cases the testimony on the part of the defendant was contradicted in many material respects by the testimony on the part of the plaintiff. In the case of Kielback v. R. R. Co., supra, the fact that the animal killed remained upon the track and ran a long distance before being overtaken by the train was clearly proven by the plaintiff and his wife, and the testimony of the trainmen that the speed of the train was slackened, etc., was contradicted by the witnesses on the part of the plaintiff. A similar conflict appears in the evidence in the case of Sheldon v. R. R. Co., supra, in which the evidence of the engineer and the trainmen was contradicted in many material respects by parties who witnessed the accident, and who saw the animal upon the track during all the time the train was passing until the animal was killed. And the same may be stated in the case of Bates v. R. R. Co., supra. The rule applicable to this class of cases was clearly stated in the case of Lighthouse v. R. R. Co., 3 S. D. 518, 54 N.W. 320, and this court has uniformly held to the rule laid down in that case, which is, in substance, that although the presumption of negligence from the killing may be overcome by the railroad company by proof that its engine, brakes, and the train generally was in a good condition, and run by competent trainmen, yet, if there is a substantial conflict in the evidence upon the question of whether or not there was any negligence in fact on the part of the company, the case must

be submitted to the jury. As we have seen, in the case at bar there is no substantial conflict in the evidence, and there is no evidence from which different minds might reasonably draw different conclusions. Assuming, therefore, as before stated, that the testimony of De Roo and the other witnesses on behalf of the plaintiff is absolutely true, it did contradict or tend to contradict, the testimony of the engineer and the other witnesses of the defendant.

Appellant further contends that under the law as laid down in McGill v. Young, 16 S. D. 360, 92 N. W. 1066, the case should have been submitted to the jury. But the rule established in that case is limited to witnesses who are parties to the action, or are shown or are presumed to be interested in the result of the action. It is not shown in the case at bar that the engineer had any interest in the result of the action, and there is no presumption that he had any such interest, and there were no facts or circumstances connected with his evidence that tended to throw suspicion upon the same. In our opinion, therefore, the court ruled correctly in directing a verdict in favor of the defendant.

The judgment of the court below and order denying a new trial are affirmed.