**EVANS et ux. v. SOUTHSIDE PLACE PARK ASS'N, Inc.**

No. 11316.

Court of Civil Appeals of Texas. Galveston.
Oct. 2, 1941.

Rehearing Denied Oct. 23, 1941.

Farish, Durno & Gordon, of Houston, for appellants.

Wood, Morrow, Gresham & McCorquodale, M. S. McCorquodale, and Roland F. Johnson, all of Houston, for appellee.

GRAVES, Justice.

This appeal—advanced pursuant to Article 4662 of Vernon's Texas Civil Statutes—is from a judgment of the 55th District Court of Harris County sustaining the appellee's general demurrer to the appellants' petition for a temporary injunction, and dismissing their cause therefor "with prejudice", in a proceeding the reaches and gist of which may be thus quoted from the appellee's brief:

"Plaintiffs, Arthur D. Evans and wife, owners of a lot in Southside Place Addition, and by virtue thereof members of the defendant, Southside Place Park Association, brought suit below, seeking injunctive relief to compel the defendant Association to extend membership to their month-to-month tenant, one C. O. Douglas. Plaintiffs had full privileges of membership and use of the park for themselves; but they contended that, by virtue of their deed, their membership in the Association and their right to use the park gave them the right to demand membership in the Park Association, and the right to use the park, on behalf of any tenant, or tenants, which they had, or might have, in the future.

"The defendant Association is a benevolent corporation composed of purchasers of lots, property owners, in Southside Place. Crain Ready-Cut House Company, developers of the Addition, deeded the park to the Association in accordance with covenants in the deeds to the property owners.

"The trial court, having all of the provisions of the deeds in question before it as a part of the pleadings, together with the charter and by-laws and the rules of the defendant Association, sustained the general demurrer to the amended pleadings of plaintiffs; holding in effect, that month-to-month tenants were not purchasers of lots, property owners, within the meaning of the provisions of the deeds, and that owners of a lot did not have the right to compel the Association to extend privileges of membership and use of the park to tenants, not parties to the suit."

Appellants challenge that adverse determination to them below upon two counts, which they succinctly state this way:

"First Point. The error of the trial court in sustaining defendants' general demurrer to plaintiffs' petition.

"Second Point. The error of the court in not granting a writ of injunction."

This court, after a painstaking consideration of the record, the briefs, and able arguments from both sides, concludes that the trial court's judgment was correct, mainly upon these considerations:

(1) Since, by stipulation of the parties, the deeds in question—that is, those respectively from the owners and developers of the Addition both to the appellee Association and to the various property owners —as well as the charter from the State to the Association, along with its own subsequent by-laws and regulations, were all made part of the pleadings below, the sole problem on appeal is for this court to construe the material terms and provisions of those instruments with the objective of determining whether, under all of those covenants and provisions as a whole, there inured to the appellants, Evans and wife, in addition to their own recognized right of membership in the appellee association, together with their consequent privilege of using the park as such, the further right to compel that Association to extend privileges of membership therein to, and permit the use of it by, all persons who were or

might become month-to-month tenants of themselves;

(2) When they are so merged and construed, neither the covenants of the several deeds involved nor the charter or by-laws of the Association vouchsafed to appellants any such right to take their tenants into the enjoyment of any such privileges with them—upon the contrary, by plain, if not necessary, implication they excluded them;

(3) Such deeds, charter, and by-laws specifically and expressly show that the association was incorporated, operated, and maintained solely for "the social benefit and enjoyment of such property owners", hence, under the principles and practice of equity, the courts will not interfere with its right to give or to deny privileges of membership in it as provided in its by-laws, since its members—in becoming such—impliedly contracted to be bound thereby.

A brief resume of what are deemed to be the controlling facts so stipulated may be thus made:

The more pertinent provisions of the deeds in question are these:

"It is expressly understood and agreed that this conveyance is made and the Vendee accepts the same subject to the following covenants and conditions which, it is agreed, shall forever be deemed and considered as covenants running with the soil; * * *

"(k) Block Eight (8) is reserved as a permanent park and playground for the exclusive use and benefit of the property owners of this Addition and the property owners of adjoining property which might be developed and sold by the vendor named herein, or its successors or assigns, the same to be maintained as such at the expense of the owner until one-half of all the lots in the Addition are sold, after which the owner shall not be liable for any part of such expense; and in the event one-half of the lots are sold prior to January 1, 1927, the owner agrees to maintain said park and playground until that date. After said date the same will be maintained by the property owners out of funds hereinafter provided for. When one-half (½) of the lots in the Addition are sold, the owner agrees to deed the park and playground to an association composed of the property owners of this Addition and they are to maintain and operate the same as such, in accordance with by-laws to be drafted by said property owners and the vendor mentioned herein.

The vendor and the property owners shall be entitled to one vote for each lot as per amended plat of record owned in said Addition in the organization and maintenance of said association.

"The purchaser of each building site at the time purchase is made, will execute his non-interest bearing note for the sum of Fifty ($50.00) Dollars, payable in installments of Ten ($10.00) Dollars each year, beginning January 1, 1927, and a like amount on the first day of January each year thereafter until the full amount has been paid. The proceeds of said note are to be used for maintenance, after January 1, 1927, of above mentioned park and playground and the streets and public utilities in said Addition, save and except those public utilities owned and operated by municipalities, or persons and corporations engaged generally in such business, in keeping with by-laws of above mentioned association of property owners. It is agreed and understood that said Fifty- ($50.00) Dollar note shall be secured by a vendor's lien against the lot purchased, but said lien shall be subordinate and inferior to the vendor's lien retained in the sale of each lot, or any lien which may be given for improvements of any lot. * * *

"(q) The foregoing terms, conditions and covenants, except that portion of (e) relating to the number of residences on each lot, shall be covenants running with the soil and shall be binding upon the Purchaser, his heirs, assigns, and legal representatives, until the first day of January, 1950."

The charter of appellee Association contains, among others, the following provisions:

"(II) The purpose for which the corporation is formed is a benevolent one, viz: the maintenance, operation, acquisition and control of a recreational park located in Southside Place for the exclusive benefit of and in the interests of the residents of said municipality, and for which no profit shall accrue to the corporation.

"(III) This corporation is organized for the benefit of all persons now or hereafter owning property embraced in Southside Place as shown on the map or plat above referred to, and is organized for purely benevolent purposes and for the social benefit and enjoyment of such property owners and other persons who may be entitled to the privileges of the park and

playground in accordance with the by-laws of the corporation. * * *

"(VII) The corporation shall be managed and controlled by five (5) trustees, to be selected annually by the then-owners of property in Southside Place, in the manner and for the term as provided for in the by-laws of the corporation and amendments thereto."

█ The plain meaning of this language in the deeds was that the "property owners", who were to form the Association that, in turn, was to become the owner of the park, were "the purchasers of lots", and that the park thereupon was to be operated "in accordance with by-laws" to be adopted by them. Such an intent by the parties to the deeds must, therefore, be read into them by one of the primal rules of construction. 14 Tex.Jur., pages 910, 915, and 919. It seems equally clear that quoted paragraph (k) thereof, having to do with the park and playground, constituted a covenant running with the land. 12 Tex. Jur., page 8, Beckham v. Ward County Irr. Dist. No. 1, Tex.Civ.App., 278 S.W. 316.

██ That the term "property owners" was used all through these provisions interchangeably and as synonymous with "purchasers of homesites" likewise seems inescapable, especially so in view of the recitation that the entire maintenance funds of the park were to be provided by non-interest bearing notes in the sum of $50 to be executed by "purchasers of each building site at the time purchase is made"; when the connecting link is added that such financing must be done in accordance with by-laws of the Association of such "property owners", it affirmatively appears that the "property owners" entitled to Association membership and park-privileges are meant to be and are confined to "the purchasers of lots"; moreover, it seems to be well settled that a mere month-to-month tenant is not such an owner. Vol. 50, page 774, C.J., (70); 17 Tex.Jur. 111; 50 C.J. page 775; Smith v. Texarkana Imp. Dist. No. 14, 108 Ark. 141, 156 S.W. 455, 44 L.R.A.,N.S., 696; Magoon v. Lord-Young Engineering Co., 22 Haw. 327; Drennan v. American Press Association, 216 App. Div. 292, 214 N.Y.S. 689; Matter of Sherry, 25 Misc. 361, 55 N.Y.S. 421; American Woolen Co. v. North Smithfield, 29 R.I. 93, 69 A. 293, 16 Ann.Cas. 1227; Crary v. Chicago, etc., R. R. Co., 18 S.D. 237, 100 N.W. 18.

Under these correlated documents, owners of lots only are to pay the entire maintenance costs of the park, and in return are given one vote each, along with two park privileges, but tenants, by necessary implication, are denied either of these visitations, that is, they are neither bound for the cost nor vested with the concessions; if they could be considered owners in such circumstances they would occupy the anomalous position of being entitled to all the benefits without paying any part of the costs thereof.

█ It is likewise clear that no title to the park grounds passed into the lot owners, but went wholly and exclusively into the corporate Association to be dealt with pursuant to the by-laws such Association and the owner of the Addition should promulgate. 10 Tex.Jur., page 781.

█ Nor was there any dedication of the park to the public generally, the clear intendment running through all the deeds, the charter, and the by-laws of the Association, unmistakably being to thereby expressly withhold and negative any such implication, but specifically reserving the entire park Block 8 as "a permanent park and playground, for the exclusive use and benefit of the property owners". 14 Tex.Jur., page 692; 14 Tex.Jur., page 698; 14 Tex. Jur., page 693; 18 C.J., page 50; 26 C.J.S., Dedication, § 8; 16 Am.Jur., page 362; Huffman v. Alexander, Tex.Civ.App., 276 S.W. 959; City of Princeton v. Gustavson, 241 Ill. 566, 89 N.E. 653; Potter v. Mullins, 267 Ky. 822, 103 S.W.2d 274; Lake Erie & W. R. Co. v. Whitham, 155 Ill. 514, 40 N.E. 1014, 28 L.R.A. 612, 46 Am. St.Rep. 355; Louisville St. L. & T. Ry. Co. v. Stephens, 96 Ky. 401, 29 S.W. 14, 49 Am.St.Rep. 303.

█ Finally, since the Association was so constituted for "the social benefit and enjoyment of such property owners", and has since been so strictly maintained pursuant to the by-laws established by those to whom that obligation was committed by all the contracts involved, it follows that the courts will not interfere with the right of such an organization to give or to deny privileges of membership in accordance with its intrinsic rules of operation—this for the structural reason that its members, in joining it, thereby impliedly agreed and contracted to abide by its by-laws: Manning v. San Antonio Club, 63 Tex. 166, 51 Am.Rep. 639; Har-

ris v. Thomas, Tex.Civ.App., 217 S.W. 1068; 5 Tex.Jur., page 141.

These conclusions require an affirmance of the challenged judgment; it will be so ordered.

Affirmed.